UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ANA ROSITA ROMERO VAZQUEZ,

Petitioner,

v.

WARDEN, ADELANTO ICE PROCESSING CENTER, *et al.*,

Respondents.

Case No. 5:26-cv-02333-FLA (SK)

**ORDER GRANTING PETITIONER'S MOTION FOR TEMPORARY RESTRAINING ORDER [DKT. 13]**

## RULING

On May 4, 2026, Petitioner Ana Rosita Romero Vazquez ("Petitioner," A# 241-713-272) filed a Petition for Writ of Habeas Corpus ("Petition," Dkt. 1), pursuant to 28 U.S.C. § 2241, challenging her detention as a violation of the Due Process Clause of the Fifth Amendment, the Eighth Amendment, the Immigration and Nationality Act ("INA"), and applicable regulations, along with an *Ex Parte* Application for Temporary Restraining Order ("Application," Dkt. 2).[1]

[1] The court cites documents by the page numbers added by the court's CM/ECF System, rather than any page numbers included natively.

On May 11, 2026, Respondents filed a Response to the Application stating, "[b]ased upon Petitioner's allegations, she appears to be a member of the Bond Eligible Class certified in *Maldonado Bautista v. Santacruz*, No. 5:25-cv-01873-SSS-BFM, … 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025)[,] *reconsideration granted in part*, [813 F. Supp. 3d 1075] (Dec. 18, 2025), *and amended and superseded on reconsideration*, [813 F. Supp. 3d 1084] (Dec. 18, 2025)." Dkt. 7 at 2.

On May 12, 2026, the court granted the Application and, in relevant part, enjoined Respondents from continuing to detain Petitioner unless she was provided with an individualized bond hearing before an immigration court, pursuant to 8 U.S.C. § 1226(a) ("§ 1226(a)"). Dkt. 8. On June 3, 2026, Respondents filed a Status Report, stating: "Petitioner was provided with a bond hearing on May 19, 2026, before an Immigration Judge," who "denied bond, finding that Petitioner was a '[f]light risk, for which no amount of bond can mitigate.'" Dkt. 10 at 2 (citing Dkt. 10-1 at 2).

On July 6, 2026, Petitioner filed the subject Motion for Immediate Release from Unlawful and Medical Dangerous Detention ("Motion"), in *pro se*. Dkt. 13. On July 6, 2026, the court appointed attorney Mario Iskander from the court's Criminal Justice Act ("CJA") Panel as counsel for Petitioner. Dkt. 17. On July 9, 2026, Petitioner, through counsel, filed a Traverse in support of the Petition. Dkt. 19 ("Traverse"). Respondents oppose the Motion. Dkt. 21 ("Opp'n"). This matter came to hearing on August 7, 2026.

For the reasons stated herein and at the hearing, the court GRANTS the Motion and ORDERS Respondents to release Petitioner from custody immediately and return all property to Petitioner that was confiscated from her when she was arrested and processed into detention. Respondents are temporarily RESTRAINED from re-arresting or re-detaining Petitioner during the pendency of the subject *habeas* action absent express authorization by this court. The court exercises its discretion and waives the posting of a bond. *See* Fed. R. Civ. P. 65(c).

/ / /

## BACKGROUND

Petitioner is a citizen of the Republic of Peru ("Peru"), who entered the United States on January 10, 2022, when she was 15-years old, and was paroled into the United States to allow her to pursue her asylum claim. Dkt. 1 ("Pet.") at 5; Dkt. 15 ("Romero Vazquez Decl.") ¶ 1. Petitioner's petition for asylum is currently pending before the Executive Office for Immigration Review. Pet. at 8; Romero Vazquez Decl. ¶ 2.

On April 14, 2025, Petitioner was arrested by U.S. Immigration and Customs Enforcement officers and re-detained, while she was attending a scheduled immigration appointment. Romero Vazquez Decl. ¶ 2. According to Petitioner, she was 19-years old at the time of her arrest, had no criminal history, and had demonstrated her commitment to following the legal process by appearing for all immigration appointments, including the one at which she was detained. *Id.* Petitioner further states she suffers from serious ongoing medical conditions, including epilepsy, severe depression, and anxiety, which have been aggravated by the conditions of her detention and inadequate access to reliable medical care at the Adelanto detention facility. *Id.* ¶¶ 2–3.

## DISCUSSION

### I. Legal Standards

#### A. *Habeas Corpus*

A writ of *habeas corpus* may be granted to any petitioner who demonstrates "[she] is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(a), (c)(3). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and … the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). "[A]t its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *Rasul v. Bush*, 542 U.S. 466, 474

(2004). A petitioner "bears the burden of demonstrating that [she] is in custody in violation of the Constitution or laws or treaties of the United States." *Noori v. LaRose*, 807 F. Supp. 3d 1146, 1159 (S.D. Cal. 2025) (cleaned up).

**B. Temporary Restraining Orders and Preliminary Injunctions**

"[T]he usual function of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Tanner Motor Livery, Ltd. v. Avis, Inc.*, 316 F.2d 804, 808 (9th Cir. 1963). "The status quo is the last uncontested status which preceded the pending controversy." *Id.* at 809 (citation and quotation marks omitted).

A plaintiff seeking a preliminary injunction or temporary restraining order "must establish that [she] is likely to succeed on the merits, that [she] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [her] favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "'serious questions going to the merits' and a hardship balance that tips sharply toward the [movant] can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1132 (9th Cir. 2011). A "serious question" is one on which the movant "has a fair chance of success on the merits." *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1421 (9th Cir. 1984).

The Ninth Circuit follows a "sliding scale" approach to the four preliminary injunction elements, such that "a stronger showing of one element may offset a weaker showing of another, as long as plaintiffs establish that irreparable harm is likely." *Doe v. Kelly*, 878 F.3d 710, 719 (9th Cir. 2017) (cleaned up). The first factor, "likelihood of success on the merits[,] is the most import factor—and even more so when a constitutional injury is alleged." *Matsumoto v. Labrador*, 122 F.4th 787, 804 (9th Cir. 2024); *see also Baird v. Bonta*, 81 F.4th 1036, 1041 (9th Cir. 2023)) ("If a movant makes a sufficient demonstration on all four *Winter* factors …, a court must

not shrink from its obligation to enforce his constitutional rights, regardless of the constitutional right at issue.") (cleaned up).

### C. Apprehension, Detention, and Parole of Aliens under the INA

"An arriving noncitizen seeking admission into the United States at a U.S. Port of Entry is 'processed either through expedited removal proceedings or through regular removal proceedings.'" *Noori*, 807 F. Supp. 3d at 1156–57 (quoting *Innovation Law Lab v. McAleenan*, 924 F.3d 503, 507 (9th Cir. 2019)). "The regular removal procedure is also known as 'section 240 proceedings[,]' … [which] involve an evidentiary hearing before an immigration judge and the ability for the individual to apply for asylum if [she] would be persecuted upon return to [her] home country." *Id.* (citing 8 U.S.C. § 1229a(a)(1), (b)(1); *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 108 (2020)). "Noncitizens seeking asylum are guaranteed due process under the 5th Amendment throughout this process." *Id.* (citing *Reno v. Flores*, 507 U.S. 292, 306 (1993)).

Pursuant to 8 U.S.C. § 1182(d)(5)(A) ("§ 1182(d)(5)(A)"), "[t]he Secretary of Homeland Security may, … in his discretion parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States," with exceptions not applicable here.[2] "[S]uch parole of such alien shall not be regarded as an admission of the alien and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which [she] was paroled and thereafter [her] case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." *Id.*

/ / /

[2] 8 C.F.R. § 212.5(a) ("§ 212.5(a)") identifies additional categories of officials who may exercise the Secretary's authority to grant or deny parole.

Termination of parole is governed by § 215.5(e), which states in relevant part:

> (1) Automatic. Parole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, at the expiration of the time for which parole was authorized, and in the latter case the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required.
>
> (2)(i) On notice. In cases not covered by paragraph (e)(1) of this section, upon accomplishment of the purpose for which parole was authorized or when in the opinion of one of the officials listed in paragraph (a) of this section, neither humanitarian reasons nor public benefit warrants the continued presence of the alien in the United States, parole shall be terminated upon written notice to the alien and he or she shall be restored to the status that he or she had at the time of parole. …

8 C.F.R. § 212.5(e)(1)–(2)(i).

Section 1226 generally governs the process of arresting and detaining aliens present within the United States. *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424, at *26 (9th Cir. July 30, 2026) (holding § 1226 applies to unadmitted aliens present in the interior of the country); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Section 1226(a) states in relevant part:

> **(a) Arrest, detention, and release**
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) [detention of criminal aliens] and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>
> (B) conditional parole; …

8 U.S.C. § 1226(a).

/ / /

## II. Analysis

Petitioner argues her arrest, the revocation of her parole, and her re-detention violate her procedural due process rights under the Fifth Amendment because she was denied prior notice and an opportunity to be heard before a neutral arbiter. Pet. at 6–8; Traverse at 4–7. Respondents respond that Petitioner cannot show a likelihood of success on the merits because Petitioner received a bond hearing where the IJ made considered determinations. Opp'n at 4. The court agrees with Petitioner.

The Fifth Amendment guarantees that "[n]o person shall be ... deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. Although "[the] Fifth Amendment's protections do not extend to aliens outside the territorial boundaries [of the United States,] … once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno*, 507 U.S. at 306.

"Due process is flexible and calls for such procedural protections as the particular situation demands." *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) (cleaned up). Courts weigh three factors to determine what procedural protections the Constitution requires in a particular case: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Id.* at 334–35. "Applying this test, the [Supreme] Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990) (emphasis in original) (collecting cases).

The first *Mathews* factor is Petitioner's private interest. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.[3] "The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty." *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (citing, *e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (finding prison parolees have a due process liberty interest)).

Because Petitioner was paroled into this country for the purpose of seeking asylum, she was present in the country lawfully and has a significant liberty interest in remaining free from detention that must be protected by adequate procedural safeguards. *See Morrissey*, 408 U.S. at 481–82 ("The parolee has relied on at least an implicit promise that parole will be revoked only if [she] fails to live up to the parole conditions. … [T]he liberty [of a parolee] is valuable" and "[i]ts termination calls for some orderly process, however informal."); *Becerra*, 787 F. Supp. 3d at 1093.

The second *Mathews* factor is the risk of an erroneous deprivation of such interest through the procedures used, and probable value, if any, of additional procedural safeguards. While "[i]t is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings[,] … [the Supreme] Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The INA grants the Secretary of Homeland Security and other authorized officials

---

[3] "[The Supreme] Court has said that government detention violates [the Due Process] Clause unless the detention is ordered in a criminal proceeding with adequate procedural protections, or, in certain special and narrow nonpunitive circumstances, where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Zadvydas*, 533 U.S. at 690 (cleaned up). Immigration removal proceedings are civil, not criminal, and courts assume they are nonpunitive in purpose and effect. *Id.*

broad discretion to grant or deny parole. 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. § 212.5(a). That discretion, however, is not unbounded and requires, at minimum, compliance with the procedural requirements of the INA.

Based on the undisputed facts in the record, the court finds the risk of erroneous deprivation is considerable here. No evidence has been presented to establish Petitioner was arrested pursuant to a warrant, as required by 8 U.S.C. § 1226(a), or provided written notice of the termination of her parole and an opportunity to be heard *before* she was re-detained, as required by 8 C.F.R. § 212(e)(2). Respondents, similarly, do not present any evidence to suggest the purpose for which parole was authorized (*i.e.*, release on humanitarian grounds while Petitioner's asylum application was pending) has been accomplished, or a qualifying official determined that neither humanitarian reasons nor public benefit warrant Petitioner's continued presence in the United States, as required under § 212.5(e)(2). To the contrary, Respondents stated at the hearing that they were unaware of any changed circumstances to justify her re-detention.

Respondents held Petitioner in detention for over one month before she was afforded a bond hearing following this court's order, and she remained detained in their custody for nearly three additional months through the date of the hearing on the Motion—even though her parole did not appear to have ever been revoked validly. Petitioner, thus, appears to have been deprived of her liberty interest erroneously based on Respondents' failure to comply with the INA, applicable federal regulations, and Petitioner's rights under the Due Process Clause.

Respondents argue due process was satisfied because Petitioner was granted a bond hearing before the Immigration Court on May 19, 2026. Opp'n at 4. The Immigration Court's decision to deny bond one month *after* Petitioner was arrested and re-detained, however, cannot support Petitioner's continued detention when the underlying arrest, revocation of parole, and re-detention were in violation of Petitioner's due process rights and, thus, invalid.

Accordingly, the court finds the risk of an erroneous deprivation of Petitioner's liberty interest was substantial based on Respondents' failure to comply with the procedural requirements of the INA and associated federal regulations when she was arrested, had her parole revoked, and was re-detained.

The final *Mathews* factor is the government's interest. Respondents fail to establish the government has any interest in allowing Respondents to arrest Petitioner, revoke her parole, and re-detain her without complying with the requirements of §§ 1226(a) and 212(e)(2). To the contrary, Respondents admitted at the hearing that they cannot identify any interest in continuing to detain her given the facts of this case. Respondents additionally do not offer any argument or explanation for why Petitioner could not have been provided with notice and an opportunity to be heard *before* her parole was revoked and she was re-detained, as is generally required under *Zinermon*, 494 U.S. at 127. Respondents, thus, fail to establish the government has any interest in Petitioner's continued detention.

After considering all three *Mathews* factors, the court finds Petitioner has met her burden to demonstrate a reasonable likelihood of success on the merits of her *habeas* claims.[4] The analysis of the remaining *Winter* factors (irreparable harm in the absence of preliminary relief, the balance of equities, and the public interest) overlaps with the *Mathews* analysis and favors granting Petitioner's request for injunctive relief and Motion. *See Matsumoto*, 122 F.4th at 804.

## CONCLUSION

For the reasons stated, the court GRANTS the Motion and ORDERS Respondents to:

(1) release Petitioner Ana Rosita Romero Vazquez (A# 241-713-272) immediately under the same conditions as she was released prior to her arrest

---

[4] Having found Respondents failed to comply with the requirements of 8 U.S.C. § 1226(a) and 8 C.F.R. § 212(e)(2), the court need not address whether due process requires additional procedural safeguards.

and re-detention;

(2) return all property to Petitioner that was confiscated from her when she was arrested and processed into detention; and

(3) file a statement with the court within five (5) business days of the docketing of this Order attesting to Respondents' compliance with this Order.[5]

Respondents are temporarily RESTRAINED from re-arresting Petitioner, revoking her parole, and/or re-detaining her during the pendency of the subject *habeas* action absent express authorization by this court. The court exercises its discretion and waives the posting of a bond. *See* Fed. R. Civ. P. 65(c).

IT IS SO ORDERED.

Dated: August 7, 2026

FERNANDO L. AENLLE-ROCHA
United States District Judge

[5] Pursuant to the court's order, Petitioner was released from custody at the conclusion of the hearing on the Motion on August 7, 2026.